## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.

**SAMSUNG ELECTRONICS
LATINOAMERICA (ZONA LIBRE), S. A.,
a company incorporated under the laws of
the Republic of Panama,**

      **Petitioner,**

**v.**

**VA TECHNOSOLUTIONS AND SERVICES,
LLC, a Florida limited liability company,**

      **Respondent.**

_____/

### PETITION TO ENFORCE INTERNATIONAL ARBITRATION AWARD

Petitioner Samsung Electronics Latinoamérica (Zona Libre), S.A. ("Samsung") files this petition to enforce the international arbitration final award entered in Samsung's favor on September 23, 2021 ("Final Award") against VA Technosolutions and Services, LLC ("VATS") and in support alleges as follows.

### I.      PRELIMINARY INTRODUCTION

1.      Samsung seeks enforcement of a final international arbitration award under the Inter-American Convention on International Commercial Arbitration. The final award was entered in Samsung's favor by a validly-constituted arbitral tribunal seated in the Republic of Panama. VATS has not paid the award and has not challenged the award in any jurisdiction. None of the grounds to deny or delay enforcement are met in this case. Accordingly, the final award should be summarily enforced.

## II.      NATURE OF THE ACTION

2.      This action is a summary procedure to recognize and enforce an international arbitration award issued in the Republic of Panama against a Florida company.

3.      The action is brought pursuant to the Inter-American Convention on International Commercial Arbitration ("Inter-American Convention"), Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245 (effective for the United States on June 9, 1978), and Chapter Three of the Federal Arbitration Act, 9 U.S.C., §§301 *et seq.* ("FAA").

4.      The arbitral award at issue, the Final Award, is a final, international commercial arbitration award issued in an arbitration proceeding ("Arbitration Proceeding") conducted under the arbitration rules ("Arbitration Rules") of the Chamber of Commerce, Industry, and Arbitration of Panama ("Panama Chamber of Commerce" or "PCC").  A true and correct copy of the Final Award is attached hereto as **Exhibit A**, and a translation of the Final Award into English as **Exhibit B**.

5.      The Final Award orders VATS to pay Samsung US $3,325,326.70, plus interest until payment in full, as follows: (i) US $2,516,246.75 for sums owed for sales of electronic products; (ii) US $697,757, as interest at 1.5% per month, from the due date of each invoice until July 7, 2021, plus interest calculated from July 7, 2021, until the total payment of the obligation; and (iii) all the expenses of the Arbitration Proceeding, including the attorneys' fees and costs Samsung and its attorneys incurred in the amount of US $111,323.09.  **Ex. A-B**, Final Award, ¶97.

6.      In accordance with the express mandate of the U.S. Congress and the obligations the U.S. assumed under the Inter-American Convention, this Court must enforce the Final Award unless one of the extremely limited grounds to deny enforcement under the Convention is met.  9 U.S.C. §§ 207, 302.

7.     None of the grounds to deny or delay enforcement are met in this case. VATS received due notice of the Arbitration Proceeding and of the appointment of the arbitral tribunal, and although it chose not to participate on the merits, it appeared three times in the Arbitration Proceeding to seek its stay. VATS, however, never challenged jurisdiction or arbitrability. Accordingly, pursuant to the Inter-American Convention, the Final Award should be enforced summarily.

### III.     THE PARTIES

8.     Petitioner Samsung is in the business of manufacturing and selling electronic products.  Samsung is a company organized and existing under the laws of the Republic of Panama.

9.     Respondent VATS is a company organized and existing under the laws of the State of Florida, with its principal place of business in Miami-Dade County, Florida.

### IV.     JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. § 1331, under Chapter 3 of the FAA implementing the Inter-American Convention, 9 U.S.C. §§ 301 *et seq.*  In particular, 9 U.S.C. § 203 (applicable to the Inter-American Convention under 9 U.S.C. § 302) provides that an action or proceeding "falling under the [Inter-American] Convention shall be deemed to arise under the laws and treaties of the United States [and] [t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."  *See also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte Gmbh*, 141 F.3d 1434, 1441 (11th Cir. 1998); *Guarino v. Productos Roche S.A.*, 839 Fed. Appx. 334, 337 (11th Cir. 2020) (unpublished) ("With respect to enforcement matters and interpretation, the New York Convention . . . and the Inter-American

Convention are substantially identical, and the case law interpreting provisions of the New York Convention is largely applicable to the Inter-American Convention.")

11.     This Court has general *in personam* jurisdiction over VATS because VATS is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

12.     Venue in this action properly lies in this District pursuant to 28 U.S.C. § 1391(b)(1) because Respondent VATS has its principal place of business in Miami, Florida.

## V.     BACKGROUND

A.      *Arbitrability of Petitioner's Claims and the Arbitration Clause*

13.     The dispute underlying the Final Award related to a distribution and sale agreement Samsung and VATS entered on January 1, 2018 ("Distribution Agreement"), attached as **Exhibit C**, and an English translation of the Distribution Agreement as **Exhibit D**.  Under the Distribution Agreement, Samsung agreed to sell electronic products to VATS for resale to other distributors in the Dominican Republic.

14.     VATS placed nine purchase orders to Samsung for electronic products pursuant to the Distribution Agreement.  Samsung issued 18 invoices, dated between September 20, 2019, and November 30, 2019, of which a balance of US $2,516,246.75 remained outstanding at the time the Final Award was issued.  **Ex. A-B**, Final Award, ¶¶57-58, 62, 63.  Samsung delivered all the products to VATS.  *Id.* ¶59.  The invoice terms required payment within 60 days of issuance and VATS failed to honor its payment obligations under the invoices and the Distribution Agreement. *Id.* ¶68.

15.     Samsung instituted arbitration pursuant to the Distribution Agreement's arbitration clause ("Arbitration Clause") which provides that claims between Samsung and VATS are to be

resolved by arbitration under the Arbitration Rules.  *See* **Ex. C-D**, Distribution Agreement, cl. 16.2.1.

**B.**     *The Arbitration Proceeding*

16.     Samsung commenced the Arbitration Proceeding on December 22, 2020, when it filed its Request for Arbitration against VATS and a Dominican entity named Maxclan Corp., S.R.L.[1].  **Ex. A-B**, Final Award, ¶15.  Pursuant to the Arbitration Rules, Samsung also nominated a main and an alternate co-arbitrators in its Request for Arbitration.  *Id.* ¶6.

17.     On January 4, 2021, the Panama Chamber of Commerce notified VATS that Samsung had initiated the Arbitration Proceeding by emailing VATS' representative, Víctor Manuel Arias Díaz, at his corporate email address including a copy of Samsung's Request for Arbitration.  *See* email from the PCC, dated January 4, 2021, attached as **Exhibit E**, together with its English translation attached as **Exhibit F**.[2]  The PCC provided VATS ten days to answer the Request for Arbitration and the opportunity to appoint a co-arbitrator in accordance with the Arbitration Rules.  *Id.*  The PCC also informed VATS that if it failed to answer the Request for Arbitration, the PCC would make a determination as to the existence of an arbitral agreement and, if confirmed, the arbitration would proceed as provided under the Arbitration Rules.  *Id.* If VATS

---

[1] Although the award was also issued against Maxclan Corp., S.R.L., enforcement of the Final Award against Maxclan Corp., S.R.L. is not sought at this time or through this Petition because, among other reasons, Maxclan Corp., S.R.L. is an entity constituted under the laws of the Dominican Republic with its principal place of business in Santo Domingo, Dominican Republic. (**Ex. A-B**, Final Award, ¶4.b).  Notwithstanding, VATS was ordered to pay all amounts under the Final Award jointly and severally.  *Id.* ¶97.

[2] Mr. Arias Diaz is and was VATS' President and Manager.  Pursuant to the Arbitration Rules, notifications or communications may be made by e-mail and shall be sent to the last known email address of the party or of its representative.  **Ex. A-B**, Final Award, ¶5.  This is consistent with art. 8 of the Panamanian Law of Arbitration, Law 131 of 2013.  *Id.*

failed to nominate a co-arbitrator, then the PCC would proceed with the arbitration as provided under the Arbitration Rules. *Id.* Mr. Arias received the email. *See* delivery confirmation, *id.*, p. 6.

18.     Respondent VATS failed to answer the Request for Arbitration or to nominate a co-arbitrator within the time limits provided by the PCC. **Ex. A-B**, Final Award, ¶17.

19.     On January 26, 2021, the Secretariat of the PCC determined that, in view of VATS' failure to nominate an arbitrator, the PCC would appoint all the arbitrators under the Arbitration Rules. *Id*. ¶8.

20.     On February 3, 3021, the Secretariat of the Panama Chamber of Commerce selected six arbitrators by lottery, three as main arbitrators and three as alternate arbitrators, in accordance with the Arbitration Rules. **Ex. A-B**, Final Award, ¶¶8-9.  On the same date, the PCC informed VATS' representative, Víctor Manuel Arias Díaz, by email of the Secretariat's decision and selection of arbitrators.  *See* email from the PCC, dated February 3, 2021, attached as **Exhibit G**, and its English translation attached as **Exhibit H**; *see also* **Ex. A-B**, Final Award, ¶10.  Mr. Arias received the email.  *See* delivery confirmation, **Ex. G-H**, p. 5.

21.     On February 15, 2021, the PCC appointed Eva Cal, Esteban López, and Claudia Frutos-Peterson as arbitrators ("Arbitral Tribunal").  **Ex. A-B**, Final Award, ¶13.  The PCC notified VATS of this appointment.  *See* email from PCC, dated February 15, 2021, attached as **Exhibit I**, and its English translation attached as **Exhibit J**; *see also* **Ex. A-B**, Final Award, ¶13.

22.     On February 22, 2021, Samsung and VATS submitted a joint communication to the PCC informing of the parties' agreement to stay the Arbitration Proceeding for 14 days pursuant to the Arbitration Rules.  *See* correspondence from Samsung and VATS' representatives, Mario Fábrega and Victor Manuel Arias Díaz, respectively, addressed to the Secretariat of the PCC, dated February 22, 2021, attached as **Exhibit K**, and its English translation attached as **Exhibit L**; **Ex.**

**A-B**, Final Award, ¶18.  Mr. Arias received the email.  *See* delivery confirmation, **Exhibit K-L**, p. 3.

23.    Samsung and VATS sent similar correspondence to the PCC seeking a 30-day extension and a 14-day extension on March 8, 2021, and April 7, 2021, respectively.  *See* correspondence from Samsung and VATS dated March 8, 2021, and April 7, 2021, attached as **Exhibits M** and **O**, and their English translation attached as **Exhibits N and P**, respectively; *see also* **Ex. A-B**, Final Award, ¶¶19-20.

24.    The Arbitration Proceeding resumed after the expiration of the third stay.  **Ex. A-B**, Final Award, ¶21.

25.    It is undisputed that VATS was aware of the existence of the Arbitration Proceeding and communicated with the Arbitral Tribunal in order to stay it multiple times.

26.    Prior to the final hearing, Samsung submitted evidence of its claims.  *Id.* ¶35.  At the final hearing, the Arbitral Tribunal questioned Samsung's expert, Gustavo Gordón, regarding his expert report.  *Id.* ¶38.  Thereafter, the Arbitral Tribunal made adjustments to account for payments made to Samsung during the course of the Arbitration Proceeding.  *Id.* ¶65.

**C.**    ***The Final Award***

27.    On September 23, 2021, the Arbitral Tribunal issued the Final Award in a 35-page reasoned decision that fully and finally disposed of all claims before the Arbitral Tribunal and which are addressed in detail in the Final Award.

28.    The Arbitral Tribunal decided and ordered as follows:

> FIRST: To declare that VA TECHNOSOLUTIONS AND SERVICES, LLC. and MAXCLAN CORP., SRL have failed to comply with their obligation to pay SAMSUNG ELECTRONICS LATINOAMERICA (ZONA LIBRE), S.A. invoices for sales of electronic products.

SECOND: To order VA TECHNOSOLUTIONS AND SERVICES, LLC. and MAXCLAN CORP., SRL to pay jointly and severally to SAMSUNG ELECTRONICS LATINOAMERICA (ZONA LIBRE), S.A. the amount of TWO MILLION FIVE HUNDRED SIXTEEN THOUSAND TWO HUNDRED AND FORTY-SIX DOLLARS OF THE UNITED STATES OF AMERICA WITH 75/100 (US$2,516,246.75) for sums owed for sales of electronic products.

THIRD: To order VA TECHNOSOLUTIONS AND SERVICES, LLC. and MAXCLAN CORP., SRL to pay jointly and severally the amount of US$697,757, as interest at 1.5% per month, from the due date of each invoice until July 7, 2021, plus interest calculated from July 7, 2021, until the total settlement of the obligation.

FOURTH: To order VA TECHNOSOLUTIONS AND SERVICES, LLC. and MAXCLAN CORP., SRL to, jointly and severally, pay SAMSUNG ELECTRONICS LATINOAMERICA (ZONA LIBRE), S.A. all the expenses of the proceeding, including the fees and expenses of the attorneys of THE PLAINTIFF in the amount of US$111,323.09.

*Id.* ¶97.

29.     Pursuant to the Arbitration Clause in the Distribution Agreement, the Final Award is "final and binding on the Parties."  **Ex. C-D**, Distribution Agreement, cl. 16.2.4.  The Final Award also provides that it is "final, mandatory, and binding."  **Ex. A-B**, Final Award, ¶93. Further, under the Arbitration Rules, which Samsung and VATS explicitly agreed to and adopted in the Distribution Agreement, "the final award shall be complied with and enforced by the parties in its entirety and without delay, unless an appeal for annulment is lodged."  Arbitration Rules, article 51.

30.     VATS has not filed an action to set aside the Final Award in Panama or elsewhere.

31.     Pursuant to the Arbitration Rules, the Final Award does not require confirmation in Panama to be enforced and can be enforced directly because it is a final international arbitration award.  Arbitration Rules, article 53.

32.     Accordingly,  pursuant to the express language of the Arbitration Clause contained in the Distribution Agreement, the applicable Arbitration Rules, and the Final Award itself, there

are no further proceedings to be had relating to the Final Award.  The Final Award should be enforced without delay by this Court in favor of Samsung.

## VI.   <u>ARGUMENT</u>

**A.**   ***The Inter-American Convention Governs this Petition***

33.    The Inter-American Convention and Chapter Three of the FAA govern this petition because the Final Award is a commercial international award issued in Panama and Samsung seeks to enforce it in the U.S.  Both jurisdictions are parties to the Convention.

34.    Section 304 of the FAA provides:

> Arbitral decisions or awards made in the territory of a foreign State **shall**, on the basis of reciprocity, **be recognized and enforced** under this chapter only if that State has ratified or acceded to the Inter-American Convention.

9 U.S.C. § 304 (emphasis added).  The Republic of Panama ratified the Inter-American Convention on December 17, 1975.

35.    Article 4 of the Inter-American Convention provides as follows:

> An arbitral decision or award that is not appealable under the applicable law or procedural rules *shall have the force of a final judicial judgment.* Its execution or recognition may be ordered in the same manner as that of decisions handed down by national or foreign ordinary courts, in accordance with the procedural laws of the country where it is to be executed and the provisions of international treaties.

Inter-American Convention, article 4 (emphasis added).

36.    Further, the Final Award is an "arbitral award arising out of a legal relationship . . . which is considered as commercial" and therefore falls squarely within the scope of the Inter-American Convention.  *See* 9 U.S.C. §§ 202, 302. Section 202 of the FAA (9 U.S.C. § 202) provides that all arbitration awards arising out of commercial relationships that are not purely domestic "fall under the Convention." *Indus. Risk*, 141 F.3d at 1440. Chapter 3 of the FAA, 9 U.S.C. §§ 301-307, implements the Inter-American Convention and § 302 incorporates § 202 by

9

reference. *See also Earth Sci. Tech, Inc. v. Impact UA, Inc*., 809 Fed. Appx. 600, 605 (11th Cir. 2020) (unpublished); *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011).

37.     Here, Samsung is a Panama corporation and VATS is a Florida corporation.  The Final Award was issued in the Republic of Panama.  Both Panama and the United States are signatories to the Inter-American Convention.  The Final Award is governed by the Inter-American Convention.

**B.    *Standard of Review for Recognition and Enforcement of International Arbitration Awards Under the Inter-American Convention***

38.     The Inter-American Convention provides that covered awards must be enforced, except on very specific and limited grounds. This Court cannot review the Arbitral Tribunal's decision on the merits, or deny enforcement on that basis. The showing required to deny enforcement is high, and the burden is on VATS.

39.     The Eleventh Circuit has explained that, "§ 302 incorporates by reference § 207 of the FAA, which provides that a federal court *must* confirm an arbitration award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *EGI-VSR, LLC v. Coderch Mitjans*, 963 F.3d 1112, 1121 (11th Cir. 2020), *cert. denied sub nom. Mitjans v. EGI-VSR, LLC*, 141 S. Ct. 1075 (2021).

40.     Proceedings to enforce foreign arbitral awards under 9 U.S.C. § 207 are summary in nature. *Empresa De Telecommunicaciones De Bogota S.A. E.S.P. v. Mercury Telco Group, Inc.*, 670 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009).  Such proceedings are "not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation [ ] or grounds for refusal to confirm."  *Chelsea Football Club Ltd. v. Mutu*, 10-cv-24028, 2012 WL 463932 (S.D. Fla. Feb. 13, 2012) (confirming award of Court of Arbitration for

Sport seated in Switzerland in favor of Chelsea Football Club) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (citation omitted)).

41.     The "showing required to avoid summary confirmation is high," *Ottley v. Schwarzberg*, 819 F.2d 373, 376 (2d Cir. 1987), and the burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation. *See Imperial Ethiopian Gov't v. Baruch–Foster Corp.*, 535 F.2d 334, 336 (5th Cir.1976); *Empresa De Telecommunicaciones*, 670 F. Supp. 2d at 1361; *see also* Inter-American Convention, article 5 ("The recognition and execution of the decision may be refused, ***at the request of the party against which it is made***, only ***if such party is able to prove*** to the competent authority of the State in which recognition and execution are requested. . . .") (emphasis added).

42.     The principal purpose underlying the Inter-American Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which . . . arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 (1974). In accordance with this principal purpose, an international arbitration award under the Inter-American Convention is "subject only to minimal standards of domestic judicial review." *Indus. Risk*, 141 F.3d at 1440 (citation omitted); *Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1240-41 (S.D. Fla. 2011) (refusing to vacate award on public policy grounds under New York Convention) (citing *Indus. Risk*, 141 F.3d at 1445-46); *see also Fla. Power Corp. v. Int'l Broth. of Elec. Workers*, 847 F.2d 680, 682-83 (11th Cir. 1998) (reversing district court that had exceeded limited authority to review domestic arbitral award).

43.     Any additional grounds for vacating an arbitration award as may be contained in Chapter One of the FAA are strictly inapplicable.  *See Indus. Risk*, 141 F.3d at 1446 ("In short, the Convention's enumeration of defenses is exclusive").

44.     VATS bears both the burden of proof and the burden of persuasion to make a convincing showing that one of the limited grounds for not enforcing the Final Award applies.  *See Empresa De Telecommunicaciones*, 670 F. Supp. 2d at 1361 ("The burden of proof is on the party defending against enforcement of the arbitral award.") (internal citations and quotations omitted); *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974) (party seeking to vacate an arbitration award bears the burden of proof to set forth specific grounds for doing so); *TMR Energy Ltd. v. State Prop. Fund*, 411 F.3d 296 (D.C. Cir. 2005) (the Convention "assigns the burden of persuasion to the party opposing enforcement").

45.     Moreover, "[d]efenses to enforcement under the [Inter-American] Convention are construed narrowly, 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts,'" *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) (quoting *Imperial Ethiopian*, 535 F.2d at 335), and "this Court's review of the award thus is extremely limited."  *Rintin Corp. v. Domar, Ltd.*, 374 F. Supp. 2d 1165, 1169 (S.D. Fla. 2005) (citation omitted), *aff'd*, 476 F.3d 1254 (11th Cir. 2007).  "This is particularly true in the context of international arbitrations, in which context there is a 'general pro-enforcement bias.'"  *Id.* (citation omitted).  Indeed, "[a]bsent 'a convincing showing' that one of these narrow exceptions [under article 5 of the Inter-American Convention] applies the arbitral award will be confirmed."  *In re Arbitration Between Trans Chem. Ltd. and*

*China Nat'l Mach. Import & Exp. Corp.*, 978 F. Supp. 266, 309 (S.D. Tex. 1997) (citations omitted).

**C.**    ***None of the Specified Grounds for Refusal or Deferral of Enforcement Under the Inter-American Convention Exist***

46.    None of the exclusive, limited grounds to deny enforcement under the Inter-American Convention applies here. It is undisputed that VATS was duly notified and had actual knowledge of the commencement of the Arbitration Proceeding and the appointment of the Arbitral Tribunal. *See* ¶¶ 17-23 above. Moreover, VATS participated in the proceeding by seeking a stay of the Arbitration Proceeding not once but three times. The Final Award must be summarily enforced.

47.    Under the Inter-American Convention, there are only two substantive grounds on which a court may refuse to enforce an award: (1) if "[t]he subject matter of the dispute cannot be settled by arbitration under the law of that State;" or (2) if the "recognition or execution of the decision would be contrary to the public policy (*ordre public*) of that State."  Inter-American Convention, article 5.2.  Neither exception is applicable here.

48.    There is no question that the parties' dispute – concerning breach of a commercial agreement for VATS to distribute and resell electronic products acquired from Samsung – can "be settled by arbitration" under U.S. law.  U.S. law strongly encourages arbitration of commercial disputes and the recognition of resulting awards.  *See*, *e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 615 (1985) (noting strong "federal policy in favor of arbitral dispute resolution, a policy that applies with special force in the field of international commerce"); *Olsher Metals Corp. v. Olsher*, No. 03-12184, 2004 WL 5394012, * 2 (11th Cir. Jan. 26, 2004) ("[t]he Federal Arbitration Act evinces a 'liberal federal policy favoring arbitration

agreements[ ],' and this presumption in favor o[f] arbitration 'applies with special force in the field of international commerce'") (internal citations omitted).

49.     Similarly, there is no question that the public policy exception is inapplicable here. For the "public policy" exception to apply under the Inter-American Convention, VATS must make a convincing showing that a defect in the Final Award was so severe and pervasive that it "would violate the forum state's most basic notions of morality and justice." *Costa*, 768 F. Supp. 2d at 1240-41.  The public policy exception is reserved for the most extreme circumstances:

> The public policy defense is to be "construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice."  "The general pro-enforcement bias informing the convention . . . points to a narrow reading of the public policy defense."

*Karaha Bodas Co.,* 364 F.3d at 306 (citations omitted).

50.     The Inter-American Convention also allows a court to refuse enforcement if the party against which enforcement is sought raises one of the following procedural objections: incapacity of the contracting parties or invalidity of the arbitration agreement; failure to duly notify a party of the appointment of the arbitrators or of the arbitration procedure; inapplicability of the arbitration agreement to the particular dispute being arbitrated; irregularity in the formation of the arbitral tribunal; or that the award is not yet binding or has been set aside or superseded by a competent authority.  Inter-American Convention, article 5.1.

51.     None of those procedural grounds applies here and, in any event, the burden is upon the party resisting enforcement to prove the existence of such grounds, here, VATS:

> The proponent of the award is required only to supply the original or a certified copy of the award and the arbitral agreement.  These establish a *prima facie* case, and the burden shifts to the defendant to establish the invalidity of the award on one of the grounds specified in Article V 1.

*Czarina L.L.C. v. WF Poe Syndicate*, 358 F.3d 1286, 1292 n.3 (11th Cir. 2004) (citation omitted); *see also Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1367, 1370 (S.D. Fla. 2009) (party resisting enforcement failed to meet burden under Article V(1); "[t]here is a 'general pro-enforcement bias' manifested in the Convention").

52.     Here, there is no question that the PCC notified VATS and made it aware of the Arbitration Proceeding as well as the appointment of the Arbitral Tribunal.  *See* ¶¶17-18, 21-22. In fact, it is undisputed that VATS was well aware of and participated in the Arbitration Proceeding by entering into an agreement with Samsung to stay the Arbitration Proceeding not once but three times.  Moreover, Samsung communicated each of the three agreements with VATS to continue the stay to the PCC and VATS' corporate representative was copied on each communication with the PCC via the same email address the PCC used to notify VATS of Samsung's Request for Arbitration, the arbitration procedure, and the appointment of the Arbitral Tribunal in accordance with the Arbitration Rules. *See* ¶¶22-23.

53.     "[T]here can be no doubt that Respondent had notice of the arbitration proceedings and chose not to participate. It did so at its own peril." *Empresa De Telecommunicaciones*, 670 F. Supp. 2d at 1362. Such is the case here.

54.     Moreover, federal courts, including the Eleventh Circuit, have rejected frivolous arguments opposing confirmation of arbitration awards.  *See B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913-14 (11th Cir. 2006) (upholding confirmation of arbitration award and considering sanctions for frivolous arguments opposing confirmation) *abrogated on other grounds by Frazier v. CitiFinancial Corp.*, 604 F.3d 1313 (11th Cir. 2010); *see also DMA Int'l, Inc., v. Qwest Comms. Int'l Inc.*, 585 F.3d 1341, 1346 (10th Cir. 2009) (ordering lawyers for losing party

to pay the prevailing party's attorneys' fees as sanctions for appealing the confirmation of an arbitral award without sufficient grounds).

55.     Samsung therefore is entitled to immediate recognition and enforcement of the Final Award under the Inter-American Convention and respectfully requests that the Court enter judgment accordingly.

## VII.    <u>CONCLUSION</u>

56.     The grounds for a court to refuse to confirm an international arbitration award under the Inter-American Convention are extremely narrow and the burden of proof is extremely high. None of the grounds to deny enforcement exists here, in any event, and the Final Award should be confirmed expeditiously.

57.     Samsung therefore requests that this Court enter a judgment:

a.      Recognizing and enforcing the Final Award rendered against VATS pursuant to the Inter-American Convention and 9 U.S.C. § 301 *et seq.*;

b.      Awarding the Petitioner all amounts awarded to it in the Final Award, as described in paragraph 97 therein, together with post-award, pre-judgment interest, and post-judgment interest at applicable rates, as follows:

i.   US $2,516,246.75 for sums owed for sales of electronic products;

ii.  US $697,757, as interest at 1.5% per month, from the due date of each invoice until July 7, 2021, plus interest calculated from July 7, 2021 until the total payment of the debt; and

      iii.  All the expenses of the Arbitration Proceeding which include the recoverable attorneys' fees and costs Samsung and its attorneys incurred in the Arbitration Proceeding which total US $111,323.09.

c.      Retaining jurisdiction over this matter through the entry of any judgment and issue any and all orders necessary for the Petitioner to enforce its judgment against VATS; and

d.      Granting any such further relief as the Court may deem just and proper.

Dated:  April 29, 2022.

                        Respectfully submitted,

                        HOLLAND & KNIGHT LLP

                        By:  /s/ Katharine Menéndez de la Cuesta
                        Alex M. Gonzalez
                        Florida Bar No. 991200
                        Katharine Menéndez de la Cuesta
                        Florida Bar No. 125433
                        Brian A. Briz
                        Florida Bar No. 657557
                        HOLLAND & KNIGHT LLP
                        701 Brickell Avenue, Suite 3300
                        Miami, Florida  33131
                        Telephone: (305) 374-8500
                        Facsimile: (305) 789-7799
                        E-mail: Alex.Gonzalez@hklaw.com
                        E-mail: Brian.Briz@hklaw.com
                        E-mail: Katharine.Menendez@hklaw.com